Filed 02/07/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-02403

---

Michele Morin et al v. The City of Burlington, Vermont

---

## DECISION ON MOTION TO DISMISS

In June 2023, the legislature enacted an amendment to the City of Burlington charter, extending eligibility to noncitizen residents of Burlington to vote in City elections, including Burlington school district elections.[1]  *See* 2023, No. M-16; 24 App. V.S.A. ch. 3 §§ 8, 8a.  Plaintiffs Michele Morin and Karen Rowell, Burlington residents and voters, now challenge the Burlington charter amendment as unconstitutional under § 42 of the Constitution insofar as it extends to school district votes, whether for the annual budget or to elect the members of the Board of School Commissioners, who develop that budget.  The City moves to dismiss.  The court grants the motion.

Two years prior, the legislature had enacted an amendment to the City of Montpelier charter, extending to noncitizen residents of Montpelier eligibility to vote in City elections.  *See* 2021, No. M-5; 24 App. V.S.A. ch. 5 §§ 1501–1504.  In January 2023, the Vermont Supreme Court rejected a facial challenge asserting that the enactment necessarily violates Vt. Const. ch. II, § 42, which requires that voters be U.S. citizens.  *Ferry v. City of Montpelier*, 2023 VT 4, 217 Vt. 450.  The *Ferry* Court drew a fundamental distinction between statewide and municipal elections and determined that § 42, and hence its citizenship requirement, applies only to statewide elections.  Municipal voter eligibility instead is determined by the legislature and, generally, also requires U.S. citizenship but for statutory exceptions such as that made in Montpelier's case.  17 V.S.A. §§ 2121(a)(1), 2656 (U.S. citizenship generally required in both statewide and municipal elections).

Seeking to avoid the application of *Ferry*, Plaintiffs here argue that while § 42 of the Constitution may generally tolerate noncitizen voting in municipal elections, school district elections are different.  They point out that after the decision in *Brigham v. State*, 166 Vt. 246 (1997), the legislature set about modifying Vermont's education funding scheme to better equalize educational

---

[1] A noncitizen is a "legal resident of the United States . . . who resides on a permanent or indefinite basis in compliance with federal immigration laws," but who is not a citizen.  24 App. V.S.A. ch. 3 § 8a(b).

opportunities among the municipalities regardless of disparities in property wealth from town to town. Plaintiffs argue that this reform has so transformed the education funding scheme to one collectively paid by voters statewide, that otherwise "local" school district elections now present fundamentally statewide matters that fall under § 42 and its citizenship requirement.

The dismissal briefing reflects no fundamental disagreement as to the current nature of school funding in Vermont. In short, local school districts determine their own budgets. How exactly those budgets then get funded is a complex matter involving numerous funding sources, including property taxes, aggregated and distributed by the State, to fund those budgets, in a manner that is calculated to comply with the equalization mandate of *Brigham*. *See Brigham*, 166 Vt. at 256 ("Money is clearly not the only variable affecting educational opportunity, but it is one that government can effectively equalize."). The redistribution of resources from municipality to municipality and from nonmunicipal funding sources, and the extra-municipal impact of individual budgets on more broadly applicable tax rates, as Plaintiffs see it, make the post-*Brigham* funding scheme a statewide matter under the principles of *Ferry*. *See* Plaintiffs' Opposition to Motion to Dismiss at 9 (filed Sept. 9, 2024) ("Burlington is by far Vermont's largest city and its budget underscores the statewide implications of school elections. In 2023, the City voted for a school budget that forced Vermont taxpayers to pay the City about $94.4 million more than the State collected from the City's homestead property taxes.").[2]

In *Ferry*, the plaintiffs presented a facial challenge to Montpelier's noncitizen voting statutes. Here, Plaintiff's challenge the relevant Burlington statutes "as applied" to school district elections only. They do not challenge noncitizen voting in other municipal elections. As the Vermont Supreme Court has explained:

> "The distinction between facial and as-applied challenges . . . goes to the breadth of the remedy." In a facial challenge, a litigant argues that "no set of circumstances exists under which [a statute or regulation] [c]ould be valid." The remedy in a successful facial challenge is that a court will invalidate the contested law. In an as-applied challenge, however, a party claims that a statute or regulation is invalid as applied to the facts of a specific case. The scope of the remedy in an as-applied challenge is narrower. Although a court grants relief "to the parties before the Court," it does not necessarily invalidate the contested law in its entirety.

---

[2] Plaintiffs point to other funding issues that point up the redistribution of resources aspect of the current funding scheme, including "categorical aid" and State rather than municipal responsibility for teacher pensions (which preceded *Brigham*), though the values of those pensions relate to municipal salary decisions. It is unnecessary to detail and deconstruct the entire funding system here. Plaintiffs' main point cannot be denied: the State is deeply involved in how the operations of school districts are funded and, at least to some extent, what happens with the budget in one district has some impact on resource availability and usage everywhere.

*In re Mountain Top Inn & Resort*, 2020 VT 57, ¶ 22, 212 Vt. 554 (citations omitted). Plaintiffs argue that the Burlington statutes are unconstitutional as applied to school district elections. "[S]tatutes are presumed to be constitutional and are presumed to be reasonable. We have often observed that the proponent of a constitutional challenge has a very weighty burden to overcome."[3] *Badgley v. Walton*, 2010 VT 68, ¶ 20, 188 Vt. 367 (citations omitted).

To be sure, the *Ferry* Court was well aware that because it was addressing a facial challenge only that it did not need to resolve precisely the line between statewide and local elections, and it did not attempt to craft a legal test for future as-applied challenges:

> Because plaintiffs bring a facial challenge, we need not define the line between 'local' or 'municipal' and 'statewide' issues in this opinion. For this reason, we disagree with plaintiffs' assertion that our conclusion in this case precludes judicial review of municipal elections. A vote municipal in name, but traditionally the province of 'freemen' in substance, could not avoid the requirements of § 42. It is a different legal question to determine whether a specific vote is properly municipal or statewide—and one not presented in this case.

*Ferry*, 2023 VT 4, ¶ 50 (citations omitted).

Nevertheless, a close reading of *Ferry* reveals that Plaintiffs are largely fighting the last war. Their argument, in substance, is as follows: (1) the voter eligibility criteria in Vt. Const. ch. II, § 42, among which is U.S. citizenship, apply to votes "touching any matter that concerns the State of Vermont"; (2) the post-*Brigham* education funding scheme means that individual school district budgets now concern the State insofar as they will have extra-municipal financial impacts; (3) Burlington voters in school district elections therefore are subject to the eligibility criteria of § 42 rather than the broader Charter provisions. *Ferry* largely rejected this type of argument.

The constitutional provision at issue in *Ferry* and here provides as follows:

> Every person of the full age of eighteen years who is a citizen of the United States, having resided in this State for the period established by the General Assembly and who is of a quiet and peaceable behavior, and will take the following oath or affirmation, shall be entitled to all *the privileges of a voter of this state*:

---

[3] To the extent that Plaintiffs argue that a presumption of constitutionality is only properly drawn when a statute is ambiguous and the court therefore must fashion a reasonable interpretation of it (not the case here), *see* Plaintiff's Opposition to Motion to Dismiss at 13–14, that assertion is wrong. As described in *Badgley*, Vermont law is crystal clear that statutes, as a general matter, are presumed to be valid—including as to their constitutionality—and reasonable. The presumption is by no means unique to Vermont. *See* 2A Sutherland Statutory Construction § 45:11 (7th ed.) ("Courts presume legislation is constitutional and resolve any doubt about the validity of a statute or amendment in favor of sustaining the legislation. . . . Unless a constitution expressly or by necessary implication restricts the actions of the legislative branch, the legislature is free to implement legislation, even if an act may be unwise, unfair, or unjust." (footnote omitted)).

> You solemnly swear (or affirm) that whenever you give your vote or suffrage, touching any matter that concerns the State of Vermont, you will do it so as in your conscience you shall judge will most conduce to the best good of the same, as established by the Constitution, without fear or favor of any person.

Vt. Const. ch. II, § 42. As *Ferry* explains, the expression "privileges of a voter of this state" relates back to those privileges exercised by *freemen*, and case law establishes that freemen exercised the privilege to vote in *statewide* elections, subject to eligibility criteria in § 42, whereas the legislature sets eligibility criteria for voting in local or municipal elections. *See Ferry*, 2023 VT 4, ¶¶ 32–36.

The fundamental distinction of consequence here is between local and statewide elections, not issues: "[Relevant] precedents draw a distinction between statewide and local *elections* for purposes of the Vermont Constitution's voting requirements. The distinction drawn is categorical, and we accordingly reject plaintiffs' contention that these cases create a flexible, case-specific sliding scale for identifying *local versus statewide issues* and therefore what voter eligibility requirements must be met for any given election. These cases dictate that § 42 does not apply to municipal elections." *Id*. ¶ 36 (emphasis added).

The Court expressly rejected the argument, nevertheless asserted by Plaintiffs here, that the question instead turns on whether the vote touches on "any matter that concerns the State of Vermont." *Id*. at ¶ 41 ("When read together with the qualifications for 'freeman,' 'touching any matter that concerns the State of Vermont' refers to matters concerning state government as opposed to local government."). Thus, under *Ferry*, when evaluating the local versus statewide distinction, one must look to the election at issue as a whole and determine the matter categorically.

The Court went on to reject the plaintiffs' argument that the contemporary prevalence of extra-municipal impacts arising out of traditionally local votes counsels in favor of rejecting the historically categorical distinction between local and statewide votes. The plaintiffs had argued,

> that the categorical conclusion that § 42 does not apply to municipal elections in our precedents is predicated on historical distinctions between local and statewide elections that no longer exist. Therefore, they assert that § 42 should properly apply to any election with an extra-municipal impact. They then list various examples of extra-municipal impacts to demonstrate that local elections today should be treated like statewide elections and therefore be limited to citizen voters. They specifically identify the fact that municipalities are subsidized by the state and that local officials serve on boards with extra-municipal impacts to explain why they believe all Vermont elections today involve "freemen's" issues.

*Id*. ¶ 39.  The Court then explained that such entanglements between state and local government are not determinative, at least as a broad matter of law:

> Fundamental aspects regarding municipalities to this day fit with the distinction our case law draws between municipal and statewide elections. Municipalities in Vermont are "created by the Legislature pursuant to express authority conferred by the Constitution" and their powers are "expressly delegated to them by legislative enactment" such that they have "no rights . . . outside the limits of legislative control." Moreover, once created, a municipality still "has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof."
>
> Further, there are limitations on the Legislature's ability to delegate power to a municipality. "In this State as elsewhere it is a doctrine well established and frequently reiterated by the courts that the functions of the Legislature which are purely and strictly legislative cannot be delegated but must be exercised by it alone." Under this doctrine, a municipality may be given "certain powers of legislation as to matters purely of local concern" or "the authority or discretion merely to execute, rather than make, the laws." Despite these connections to statewide government, municipalities generally remain entities that control local affairs. Also, municipal officers today are still accountable to their local electorate and not "the votes of the freemen of the State at large." It is fundamentally different to act as a statewide officer compared to a municipal officer in terms of powers and accountability. Therefore, the structure of the Vermont Constitution and the Constitution's treatment of municipalities in the scheme of statewide governance indicate that Chapter II's requirements for statewide elections and representatives, including those in § 42, do not apply to municipal elections and officers.

> \*   \*   \*

> . . . [W]e do not agree with plaintiffs that some extra-municipal impact, no matter how tenuous, constitutes a statewide issue subject to the requirements in § 42. The "purely local" distinction plaintiffs ask us to draw is untenable and not grounded in history.

> \*   \*   \*

> . . . . There is still a difference between municipal government and state government.

*Id*. ¶¶ 45–46, 48–49 (citations omitted).  The *Ferry* Court plainly rejected the argument the identification of extra-municipal impacts is sufficient on its own to render an election one properly characterized as addressing a statewide rather than a local matter.  If extra-municipal impacts alone— and that is the only argument Plaintiffs raise here—can be sufficient, they presumably would have to

be so substantial as to reflect that the municipal voters effectively are deciding statewide rather than local matters.

This is not what happens when Burlington voters cast their votes in school district elections. Such elections are addressing distinctly local matters: who will be their school board members, and whether to support the budget, and all the distinctly local priorities it represents, as recommended by the board. Board members' duties are distinctly local in nature. *See generally* 24 App. V.S.A. ch. 3 §§ 163–170 (school commissioners).[4] Nor in adopting a budget are they in fact adopting a budget for any other municipality.

Burlington voters in these elections have no say in how the school funding scheme adopted by the legislature operates, and they are not in any meaningful sense responsible for how that system affects them in relation to non-Burlington voters and municipalities. In short, Plaintiffs identify extra-municipal impacts, but they do not identify extra-municipal impacts that transform a local election into a statewide election in any meaningful sense under Vermont case law. School district elections have always been considered municipal, rather than statewide, in nature. *See Woodcock v. Bolster*, 35 Vt. 632, 638 (1863) (voters in school district elections not required to be freemen).

*Brigham* did not change that. It expressly distinguished between those education matters properly left to local control and how schools are funded:

> Individual school districts may well be in the best position to decide whom to hire, how to structure their educational offerings, and how to resolve other issues of a local nature. The State has not explained, however, why the current funding system is necessary to foster local control. Regardless of how the state finances public education, it may still leave the basic decision-making power with the local districts.

*Brigham v. State*, 166 Vt. 246, 265–66 (1997); *see also id*. at 267 ("[T]here is no necessary or logical connection between local control over the raising of educational funds, and local decisionmaking with respect to educational policy.").

Plaintiffs focus exclusively on extra-municipal impacts related to educational funding. Any such impacts are indirect and, as to their specifics, out of Burlington voters' hands. Burlington school district elections address traditional local issues not in the province of freemen. The legislature thus was free under *Ferry* to determine the eligibility criteria for voters in such elections.

---

[4] There is no need to itemize all the functions of board members. Their duties—not surprisingly—all are focused on managing Burlington's school district, not that of any other municipality.

## <u>ORDER</u>

The court grants the motion. The case is dismissed with prejudice.

Electronically signed pursuant to V.R.E.F. 9(d): 2/6/2025 3:25 PM

_____
Samuel Hoar, Jr.
Superior Court Judge